ERIC S. KLEIN              :
      Plaintiff          :
                    :      CIVIL ACTION NO.
v.                   :      3:06-cv-652 (JCH)
                    :
THE NORTHWESTERN MUTUAL LIFE :
INSURANCE COMPANY     :      MAY 20, 2008
      Defendant       :

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 29]**

This diversity case involves an insurance contract governed by Connecticut law.

Plaintiff Eric S. Klein, a practicing dentist, purchased two disability policies from

defendant Northwestern Mutual Life Insurance Co. ("Northwestern"). Subsequently,

Klein suffered a hand injury that reduced his ability to practice dentistry and required

him to make various accommodations to his practice. Klein sought disability benefits

under his Northwestern policies. Although Northwestern initially denied Klein's claim,

after subsequent investigation it decided to classify Klein as "partially disabled," and it

proceeded to pay him benefits accordingly. Klein nonetheless maintains he is "totally

disabled" and therefore entitled to greater payments. He has thus brought this action

alleging breach of contract and related claims. Pending before the court is

Northwestern's Motion for Summary Judgment. See Doc. No. 29. For the reasons that

follow, the court **GRANTS** the Motion.

## I.     STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish

that there are no genuine issues of material fact in dispute and that it is entitled to

judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  Once the

moving party has met its burden, the nonmoving party must "set forth specific facts

showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present

such evidence as would allow a jury to find in his favor in order to defeat the motion.

Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all

inferences in favor of the party against whom summary judgement is sought.  Anderson,

477 U.S. at 255; Graham, 230 F.3d at 38.  "This remedy that precludes a trial is

properly granted only when no rational finder of fact could find in favor of the

non-moving party."  Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000).

"When reasonable persons, applying the proper legal standards, could differ in their

responses to the question" raised on the basis of the evidence presented, the question

must be left to the jury.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## II.   FACTUAL BACKGROUND[1]

Klein is the sole shareholder in a dental practice, Maerowitz-Klein, DDS, P.C.,

that operates in Norwalk, Connecticut.  Klein Aff. ¶¶ 9-10.  In 1996, Klein purchased a

disability insurance policy from Northwestern, and he also purchased a second disability

policy from Northwestern in 2001.  Id. ¶¶ 2, 16.  The terms of these two policies are at

the heart of the instant dispute.

---

[1] For the purposes of the instant motion, the court accepts facts undisputed by
the parties as true and resolves disputed facts in favor of the plaintiff where there is
evidence to support his allegations.

The 1996 policy states, in pertinent part:

> Until [April 30, 2026], the Insured is totally disabled when
> unable to perform the principal duties of the regular
> occupation.  After [April 30, 2026], the Insured is totally
> disabled when both unable to perform the principal duties of
> the regular occupation and not gainfully employed in any
> occupation.
>
> If the Insured can perform one or more of the principal duties
> of the regular occupation, the insured is not totally disabled;
> however, the Insured may qualify as partially disabled. . . .
>
> The Insured is partially disabled when:
>     a. the Insured is unable:
>         - to perform one or more but not all of the
>         principal duties of the regular occupation; or
>         - to spend as much time at the regular
>         occupation as before the disability started;
>     b. the Insured has at least a 20% Loss of Earned Income; and
>     c. the Insured is gainfully employed in an occupation.

Defendant's Exh. A at 3, 5.  The 2001 policy contains similar terms.  It states, in

pertinent part:

> During the first 24 months of disability following the
> Beginning Date, the Insured is totally disabled when unable
> to perform the principal duties of the regular occupation.
> After the first 24 months of disability following the Beginning
> Date, the Insured is totally disabled when both unable to
> perform the principal duties of the regular occupation and
> not gainfully employed in any occupation.
>
> If the Insured can perform one or more of the principal duties
> of the regular occupation, the insured is not totally disabled;
> however, the Insured may qualify as partially disabled. . . .

Defendant's Exh. B at 3, 16.  The 2001 policy also goes on to define "partial disability"

in a manner identical to the 1996 policy.  See id. at 5.

Between 1990 and February 2003, Klein helped build his dental practice into a

successful and growing concern.  Klein Aff. at ¶ 20.  During that time, he was physically

able to perform every dental procedure he was trained for, and he often took continuing education courses to enable him to perform advanced procedures.  Id. at ¶ 22.

In February 2003, Klein's appendix ruptured.  Id. ¶ 23.  Klein had surgery to remove his appendix and, while he was recovering from the surgery in the hospital, a nurse improperly inserted an IV needle into his left arm, damaging some of the nerves.  Klein suffered from numbness, pain, and paralysis.  Although the numbness and pain have subsided, Klein's left hand is permanently damaged such that his left thumb does not flex, his left forefinger is not fully functional, and his left middle finger is not fully functional.  Id. ¶¶ 24-25.

Since the accident, Klein has returned to practicing dentistry.  Id. at ¶¶ 28-32; Klein Dep. at 223-25.  Klein is right-handed, Klein Aff. at ¶ 4, and so the injury to his left hand does not completely preclude his ability to perform procedures.  However, Klein has been significantly limited in the kinds of procedures he is able to perform.  In particular, to overcome his limitations he often needs to contort his body in unusual ways.  Id. at ¶ 32.  He also cannot work alone, as he did before his injury, and he requires an assistant at all times.  Id. at ¶ 35.  When he does perform procedures, he is much slower than he previously had been, and he no longer performs any procedures in the exact manner that he was originally trained to perform them.  Id. ¶ 33.  Klein's injury also limits his ability to work with children; he now only treats individual children that he has pre-determined will be capable of sitting still during procedures.  Id. at ¶ 36.  Klein avers that he is generally unable to perform any of his duties in the customary and usual manner in which a dentist performs them.

Before the injury, Klein performed approximately 355 different billable

procedures; after the injury Klein became unable to perform about 170 of these.  Id.

¶ 33.  Also, Klein now works fewer hours during the week, generally coming in only on

Tuesdays, Wednesdays, and Thursdays.  Klein Dep. at 223.  As of mid-April 2007,

Klein was performing such procedures as restorations, fillings, preparing teeth for

crowns, replacing crowns, and using hand drills for various dental actions.  Id. at 45-47,

52-53.  Klein also continues to perform office exams.  Id. at 56.  Klein acknowledges

that, when he performs dental work, he does so within the standard of care.  Id. at 132.

On May 19, 2003, Klein filed an initial Request for Disability Benefits with

Northwestern.  Defendant's Exh. C.  The Northwestern-provided form contained space

to check off one or both of two possible claim boxes.  The first box allowed claimants to

check off that, for a given period of time, they "did not perform any job duties and [are]

claiming Total Disability benefits during" that period.  Id. at 3.  The second box allowed

claimants to check off that, for a given period of time, they "performed some job duties

and/or worked only part time and [are] claiming Partial Disability [b]enefits during" that

period.  Id.  There was no opportunity for claimants to check off that they were applying

for Total Disability benefits because, although they performed some job duties, none of

these were principal job duties within the meaning of their policy.  See generally id.

Klein's initial form stated that he was applying for Total Disability benefits for nine

days in February 2003, and Partial Disability benefits for March 21, 2003 through the

present.  Id. at 3.  His claim was initially reviewed by Gladys Gallaher, a Northwestern

Claims Analyst.  On or about June 16, 2003, Gallaher spoke to Klein via telephone, and

they discussed Klein's job duties and hours worked, both before and after the injury to

his left hand.  Gallaher then sent Klein a letter summarizing her understanding of the

conversation and asking Klein to make any revisions before sending it back to her. Defendant's Exh. E. There is no evidence in the record that Klein sent any revisions, though Klein did send some additional records to Gallaher, as Gallaher had requested. Gallaher's summary letter describes limitations that are much less severe than what Klein now alleges to be the case.

On August 6, 2003, Northwestern informed Klein that it was denying his claim, based on the evidence Gallaher acquired from her discussion with Klein, and on the information in Klein's Request for Disability Benefits. According to Northwestern, Klein did not meet the definition of "partial disability" because he was not impeded in his ability to perform the principal functions of his job and because his time at work was not affected by his injury.[2] Defendant's Exh. H.

Klein informed Northwestern that he disagreed with its decision, and the company undertook further review. In September 2003, the company made an "accommodation payment" to Klein while it continued its review. Sue Goldberg, a Northwestern employee, then interviewed Klein on October 30, 2003. And in December 2003, Northwestern sent Klein's medical records to William Dzwierzynski, M.D., who conducted his own review. While that review was pending, Northwestern made another accommodation payment to Klein in January 2004.

Dr. Dzwierzynski completed his review on March 10, 2004, and he sent the results to Northwestern. Plaintiff's Exh. 3. One of Northwestern's questions to Dr.

---

[2] In contrast to what Klein represents is his current job schedule, his initial submissions to Northwestern indicated that he worked as much as 35 hours per week after his injury. Defendant's Exh. C.; Defendant's Exh. E.

Dzwierzynski had asked: "For what period of time would Dr. Klein have been impaired from performing all of his pre-disability work activities, as efficiently as he had previously done them." Id. at 4. Dr. Dzwierzynski responded:

> With loss of function of the anterior interosseous nerve, Dr. Klein would have a disability from performing all the functions of his dental practice. The anterior interosseous nerve is important in power pinch, which is an essential function in holding instruments. Although the left-hand is his non-dominant hand, it performs an essential role in assisting, especially intense [sic] manipulative procedures. Dr. Klein's assessment of his injury would be consistent with an anterior interosseous nerve injury.

Id. at 4-5. Elsewhere, in response to a different question from Northwestern, Dr. Dzwierzynski opined that Klein "probably could perform most of the essential functions of a dental practice with modifications, such as different grips or changing his hands." Id. at 5.

Shortly after receiving Dr. Dzwierzynski's report, and based on additional information received, Northwestern informed Klein that it was approving his request for partial disability benefits, with the date of disability established to be February 16, 2003. Northwestern also informed Klein that, going forward, he would need to submit proof of continuing disability every month.

During its investigation of Klein's claim, Northwestern surreptitiously watched and videotaped Klein and his family – presumably in an (unsuccessful) attempt to film him engaging in activities inconsistent with his claims. Klein Aff. at ¶ 47. Additionally, Northwestern engaged in various background searches to learn more about Klein, including checking civil and criminal court records, checking his professional licenses, and doing internet and media searches. Id. at ¶ 46. At no time did Northwestern

specifically tell Klein what it believed were the "principal duties" of his job.  Id. at ¶ 50.

Klein filed the instant lawsuit against Northwestern on April 27, 2006.  In his Amended Complaint, filed November 7, 2006, Klein alleged that he was "totally disabled" within the meaning of the 1996 and 2001 policies.  Related to this allegation, Klein brought four claims for relief: (1) breach of contract as to the 1996 policy; (2) breach of contract as to the 2001 policy; (3) breach of the covenant of good faith and fair dealing; and (4) violation of the Connecticut Unfair Trade Practices Act (CUTPA)/Connecticut Unfair Insurance Practices Act (CUIPA).  Amended Compl. at 3-6.  Klein's Amended Complaint contained only a specific request for monetary damages; the Amended Complaint contains no specific requests for either a declaratory judgment or injunctive relief.  Id. at 7.

In February 2007, while discovery in this case was underway, Klein had unrelated shoulder surgery on his right shoulder.  Klein Aff. at ¶ 40.  After the surgery, Klein's right hand began to exhibit many of the same symptoms of his left hand.  Id. This right-hand problem, which Klein believes is likely permanent, further limits Klein's ability to practice dentistry.  Id. at ¶¶ 40-41.

## III.    ANALYSIS

### A.    Breach of Contract

The main dispute in this case surrounds whether Klein is "totally disabled" within the terms of the policy documents.  Construction of an insurance contract presents a question of law, see Aetna Life & Cas. Co. v. Bulaong, 588 A.2d 138, 142 (Conn. 1991), and thus may appropriately be resolved on summary judgment.  In Connecticut, a

court's interpretation of an insurance contract must attempt to discern the intent of the contracting parties, as evidenced by the policy terms. <u>Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co.</u>, 724 A.2d 1117, 1119 (Conn. 1999). When the policy terms are ambiguous, the ambiguity must be construed against the insurance company, who was the drafter of the policy. <u>Id.</u> at 1120. When there is no ambiguity, however, the court must give effect to the plain meaning of the policy's language, even if the insured interprets the policy differently. <u>See</u> <u>id.</u>

As Northwestern interprets the relevant policies, Klein is not totally disabled if he can perform one or more of his principal duties, with or without accommodation. And in Northwestern's view, Klein can perform one or more of his principal duties because he can (and does) still perform a number of dental procedures – albeit less efficiently and with the help of an assistant. <u>See</u> Defendant's Mem. in Support at 17.

Klein's first argument is that he is totally disabled because, even assuming that he can perform "one or more" principal duties, he cannot perform "many" principal duties. Klein focuses on the policy's language that "the Insured is totally disabled when unable to perform the principal duties of the regular occupation," which he reads to refer to "many" principal duties.

Klein's argument completely ignores other pertinent language in the policies. Importantly, both policies clearly state that, "[i]f the Insured can perform one or more of the principal duties of the regular occupation, the insured is not totally disabled; however, the Insured may qualify as partially disabled." In light of this language, it is unambiguous that Klein is not totally disabled if he can perform at least one principal duty.

9

Klein next argues that he cannot perform any of his "principal duties" because he cannot perform them in the "customary and usual manner." In support of his argument, Klein relies on a Connecticut Supreme Court case, <u>Solberg v. Aetna Life Insurance Co.</u>, 201 A.2d 465 (Conn. 1964), which Klein reads to mean that one cannot perform a principal job duty unless he performs that duty in its customary and usual manner.

Klein stretches <u>Solberg</u> too far. In <u>Solberg</u>, the court interpreted a policy that required payment for total disability if the insured suffered injuries that "disable and prevent the Insured from performing every duty pertaining to his occupation." <u>Id.</u> at 465 (internal quotation marks omitted). The <u>Solberg</u> court, relying on general principals of insurance law, found that

> [t]otal disability under such a clause "does not mean, as its literal construction would require, a state of absolute helplessness, but contemplates rather such a disability at least, . . . as renders the insured unable to perform all the substantial and material acts necessary to the prosecution of his business in a customary and usual manner. The fact that the insured is able to perform some inconsequential, trivial, or incidental duties connected with his usual employment or occupation does not preclude recovery under such a total disability provision, regardless of its particular phrasing."

<u>Id.</u> (ellipsis in original) (quoting 29A Am. Jur., Insurance, §§ 1517-18). The court went on to conclude that the plaintiff, who could not perform his primary duty of operating a jig-boring machine, but who could still perform the incidental duties of checking bills and reading blueprints, was totally disabled under the policy. <u>See id.</u> at 639. The court specifically noted that these duties were only "incidental" to the plaintiff's primary job duty. <u>Id.</u>

Although <u>Solberg</u> contains language about performance "in the customary and

usual manner," it is plain that the outcome is <u>Solberg</u> is being driven by the court's concern for a plaintiff who can only perform minor and incidental duties, and who cannot perform any of the primary functions of his job. Indeed, the cases that <u>Solberg</u> cited and relied upon are both to this effect. <u>See</u> <u>Morgan v. Aetna Life Ins. Co.</u>, 157 F.2d 527, 529 (7th Cir. 1946) (reading a total disability clause liberally "so that mere triviality of service, or service negligible in character compared to the ordinary tasks performed, is not to be held to transform permanent disability into partial, or [to] interrupt continuity of disability thereby precluding recovery"); <u>Heald v. Aetna Life Ins. Co.</u>, 104 S.W.2d 379, 382-83 (Mo. 1937) (finding that a total disability provision in a contract would be essentially useless to an insured if the policy could be read to preclude recovery so long as the insured was able to perform any job duty, no matter how trivial).

Here, the contract language differed materially from the language in <u>Solberg</u>. Both Northwestern policies stated that an individual would be totally disabled if he could not perform any <u>principal</u> job duties. Thus, unlike in <u>Solberg</u>, the policies here do not present the possibility that an insured will be denied disability benefits solely because he can perform minor and incidental tasks related to his work. Accordingly, the court concludes that <u>Solberg</u> provides no reason to depart from Connecticut's longstanding rule that courts must give effect to the plain language in an insurance contract.

In this case, the plain language of the contract precludes an award of total disability befits when the insured "can perform one or more of the principal duties of the regular occupation." The plaintiff is essentially asking the court to insert the terms "in the customary and usual manner" into the contract. But there is no basis for doing so;

11

the insurance policy speaks only of the fact of performance, and it is silent on the manner of performance.

Furthermore, this result accords with what one might expect from a disability policy. The premise behind a total disability policy is that, when the uninsured is completely unable to perform his occupation (and thus cannot earn money from doing so), he is fully reliant on the supplemental income provided by a total disability policy. When an insured can instead partially perform his job, and can thus earn some money from his occupation (albeit less than was the case earlier), it makes sense that such an individual would be classified as "partially" disabled. Klein is an individual in the latter situation.

Klein next argues that he must be deemed totally disabled in light of Dr. Dzwierzynski's finding that Klein has "a disability from performing all the functions of his dental practice." Klein argues that summary judgment must therefore be precluded because there is evidence he is unable to perform <u>any</u> of the principal functions of his occupation.

Klein takes Dr. Dzwierzynski's statements out of context. The quoted part of Dr. Dzwierzynski's report came in response to a question from Northwestern regarding whether Klein could perform his job duties "<u>as efficiently</u> as he had previously done them." Plaintiff's Exh. 3 at 4 (emphasis added). Accordingly, Dr. Dzwierzynski is merely stating that Klein is unable to perform his duties as efficiently as he previously had done them; Dr. Dzwierzynski is not saying that Klein is unable to perform these duties at all. Indeed, elsewhere in the report Dr. Dzwierzynski makes clear that Klein "probably could perform most of the essential functions of a dental practice with modifications, such as

different grips or changing his hands." Id. at 5.  Tellingly, Klein himself acknowledges that he can, and does, perform some of his job duties (with accommodations).  See Klein Dep. at 46-47, 52-53.

As a final argument, Klein suggests that he is totally disabled in light of his recent injury to his right hand.  As an initial matter, however, his right-hand injury is not relevant to this case.  Klein's Amended Complaint was filed in November 2006, before his right hand injury even occurred, and hence Northwestern was not properly put on notice that Klein's current lawsuit rests on changes to his health subsequent to the filing of the Amended Complaint.  Indeed, given that Klein only sought compensatory damages in his Amended Complaint, and did not specifically seek prospective relief such as a declaratory judgment or an injunction, it is difficult to see how Klein's post-Amended Complaint injury can have any bearing on the instant dispute.[3]

In any event, Klein admitted at his deposition that, even after his new injury, he continued to perform a number of dental procedures.  See id.  Thus, even though Klein may now be even less efficient at his work than he was previously, the undisputed facts show that he can still perform some of the principal duties of his occupation, and thus he is not totally disabled.

B.     Bad Faith

Klein next argues that Northwestern violated the duty of good faith and fair

---

[3] Without citation to any authority, plaintiff also suggests that the court should deny summary judgment because the defendant's initial motion for Summary Judgment failed to discuss the right-hand injury, and also failed to fully quote from Dr. Dzwierzynski's report.  These are not grounds for denying summary judgment in a case where there is no disputed issue of material fact.

dealing that is implied into every Connecticut contract.  <u>See</u> <u>Home Ins. Co. v. Aetna Life</u> <u>& Cas. Co.</u>, 663 A.2d 1001, 1008 (Conn. 1995).  This duty requires both parties to a contract to conduct themselves in a manner that will not injure the right of the other party to receive the benefits of the agreement.  <u>Id.</u>

Klein first suggests that Northwestern violated this duty when it declined to grant Klein total disability benefits, notwithstanding Dr. Dzwierzynski's conclusions.  However, as discussed above, Dr. Dzwierzynski's report actually supports the defendant's position that total disability benefits are inappropriate.

Klein also suggests that Northwestern acted with bad faith when it developed its initial claims form.  Klein argues that, because the claims form does not closely track the language in Northwestern's policies, it suggests to people that they will only qualify for total disability coverage if they cannot perform <u>any</u> job duties, as opposed to any <u>principal</u> job duties.  Accordingly, Klein believes that Northwestern is attempting to trick people into applying for partial disability benefits, when they in fact qualify for total disability benefits.

Even if Klein is correct, this does not suffice for Klein to maintain his claim.  As discussed above, Klein is in fact not totally disabled within the meaning of the policies.  Accordingly, even if Northwestern's forms delude some unnamed individuals not before the court, there is no evidence that Northwestern has deprived <u>Klein</u> of any benefits to which he would otherwise be entitled in the absence of defendant's purported bad faith.  <u>See</u> <u>Verrastro v. Middlesex Ins. Co.</u>, 540 A.2d 693, 699 (Conn. 1988) (explaining that the doctrine of good faith cannot be applied to achieve a result that is not authorized by the relevant agreement).

Finally, Klein baldly asserts that Northwestern engaged in bad faith conduct when it conducted background checks, video surveillance, and other investigations, as part of its analysis in determining whether or not to pay benefits.  Once again, however, Klein has failed to indicate any way in which these actions deprived him of contractual benefits to which he would otherwise have been entitled.[4]

C.    CUIPA/CUTPA

Klein also presses claims under CUIPA and CUTPA.  He contends that Northwestern violated these statutes for the same reasons that he believes they acted in bad faith.

To the extent that Klein is asserting a pure CUIPA claim, his action is not maintainable.  The Second Circuit has ruled that CUIPA does not itself provide a private right of action for plaintiffs wronged by allegedly unfair insurance practices.  See Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 119 (2d Cir. 2001).

It is possible, however, to bring a CUIPA claim through the private right of action conferred by CUTPA.  See Mead v. Burns, 509 A.2d 11, 17-18 (Conn. 1986).  However, if Klein is asserting a CUIPA claim through CUTPA, or if he is asserting a pure CUTPA claim, he must show that any allegedly unfair practices have actually caused him harm.  See Stevenson Lumber Co.-Suffield, Inc. v. Chase Assocs., Inc., 932 A.2d 401, 406-07

_____

[4] Klein does briefly allude to the fact that Northwestern initially denied his claim for even partial disability benefits.  However, Klein has not demonstrated that this denial was in bad faith.  Indeed, Klein has not argued that, based on the information available to Northwestern as of August 6, 2003, Northwestern lacked a good faith belief that Klein did not qualify as partially disabled.

Presumably, such a claim by Klein would not lead to an award of damages anyway, as Northwestern ultimately decided to pay him partial disability benefits retroactive to February 2003.

15

(Conn. 2007) (explaining CUTPA's causation requirement).  In this case, as discussed above, any allegedly unfair/bad faith actions taken by Northwestern did not ultimately deprive Klein of benefits to which he was entitled under the insurance contracts. Accordingly, Klein has not demonstrated the requisite causation, and his CUIPA and CUTPA claims must fail.

## IV.    CONCLUSION

In light of the foregoing, there are no disputed issues of material fact.  The defendant's Motion for Summary Judgment [Doc. No. 29] is **GRANTED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 20th day of May, 2008.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge